THE ESMOND MILLS, INC. *vs.*

AMERICAN WOOLEN COMPANY *et al.*

OCTOBER 28, 1949.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

BAKER, J. This is a petition for apportionment brought under the provisions of general laws 1938, chapter 300, article VIII, §8, to compel the respondents American Woolen Company and its insurance carrier to reimburse the petitioner for their proportionate share of compensation and medical expenses which had been paid by the petitioner to Carmelo Crino, who had been employed by both parties. After a hearing, the superior court granted the prayer of the petition and entered a decree ordering the respondents to pay to the petitioner certain specific sums of money. From the entry of that decree the respondents duly appealed to this court.

It appears from the evidence that Carmelo Crino, hereinafter called Crino, was employed by the respondent American Woolen Company, referred to as American for convenience, from December 21, 1942 to June 13, 1943. While so employed, on or about May 21, 1943, he suffered an occupational dermatitis in the nature of an eczema. Under an agreement he was paid compensation by American for total incapacity from June 14 to August 20 and he returned to work August 23, 1943. However, he was unable to do the work at which he had been employed when he became infected and applied for an outdoor job. When

this was refused he left American. After working successively for several other employers he entered the employ of petitioner The Esmond Mills, Inc., hereinafter called Esmond, on April 19, 1944 where he remained continuously until October 28, 1944 during which time he had again become totally disabled from occupational dermatitis.

Thereafter he filed two petitions for compensation and medical expenses, the one against American being a petition for review and the other against Esmond being an original petition. These petitions were heard together in the superior court and decrees containing findings of fact were duly entered. Those findings were identical in the two decrees with the exception of an added finding concerning medical expenses which was contained in the decree against Esmond. The petition for review against American was dismissed without prejudice to the right of Esmond to reimbursement from American. The original petition against Esmond was granted; and the decree entered therein contained a finding that Crino was suffering total disablement from a compensable occupational disease and ordered payment of compensation for total disability and medical expenses, without prejudice to the right of Esmond to reimbursement under §8, art. VIII, of the workmen's compensation act. No appeal was taken from the entry of either of those decrees. The papers and records in the two above-mentioned petitions were specifically called to the attention of the trial justice in the instant cause and were treated as exhibits therein.

The decrees hereinbefore referred to contained among others the following material findings of fact: "1. Crino was employed by the American Woolen Company and while so employed and on or about May 4, 1943 and while in the course of his employment came in contact with bichromate of soda. 2. Crino developed a case of dermatitis on or about May 21, 1943 as a direct result of his exposure to and contact with bichromate of soda, as found in finding No. 1. * * * 5. While still suffering from dermatitis in its less

acute form, he returned to work for the American Woolen Company on August 23, 1943, but was unable to continue in the work at which he had been employed when he became infected with dermatitis, left such work, applied for outdoor work, which was refused, and then left the employ of the American Woolen Company. * * * 7. During the period which elapsed from August, 1943 to April, 1944 when he entered the employ of the Esmond Mills, Incorporated, the dermatitis became less acute and its manifestations subsided, but at no time had the dermatitis entirely disappeared. 8. As a result of the attack of dermatitis suffered while in the employ of the American Woolen Company, Crino became more susceptible to irritants of various descriptions such as dust, heat, humidity, oil and conditions generally prevalent in textile mills. 9. While in the employ of the Esmond Mills, Incorporated, the dermatitis became more acute and widespread on his body. 10. The cause of such increased severity of dermatitis was due to conditions in the card room and the boiler room in which portions of the plant Crino worked while employed at the Esmond Mills, Incorporated, and was due to oils, lubricants and dust there present. 11. Crino was obliged to leave his employment at the Esmond Mills, Incorporated by reason of disability due to the conditions described in findings Nos. 9 and 10. 12. That his condition described in findings Nos. 9, 10 and 11, was due (a) to dermatitis first contracted at the plant of the American Woolen Company, as found in findings Nos. 1 and 2 (b) and rendered more acute as found in findings Nos. 9 and 10. * * * 14. I make the ultimate finding that Crino is now suffering total disablement from an occupational disease which is compensable, as alleged in his petition for review and in his original petition for compensation."

In the present proceeding the decree appealed from contained findings of the total amount of compensation and medical expenses due to April 10, 1948 and also the number of days Crino had been employed by American and Esmond

respectively. From these figures the alleged proportionate share due Esmond was computed. There is no dispute between the parties concerning the length of time Crino was employed by them, the amount of his wages, the amount of compensation and medical expenses paid by Esmond, or the mathematics of the apportionment. This cause was brought under §8, art. VIII, of the workmen's compensation act, which reads as follows:

"The total compensation due shall be recoverable from the employer who last employed the employee in the employment to the nature of which the disease was due and in which it was contracted. If, however, such disease was contracted while such employee was in the employment of a prior employer, the employer who is made liable for the total compensation as provided by this section, may appeal to the director of labor for an apportionment of such compensation among the several employers who since the contraction of such disease shall have employed such employee in the employment to the nature of which the disease was due. Such apportionment shall be proportioned to the time such employee was employed in the service of such employers, and shall be determined only after a hearing, notice of the time and place of which shall have been given to every employer alleged to be liable for any portion of such compensation. If the director finds that any portion of such compensation is payable by an employer prior to the employer who is made liable for the total compensation as provided by this section, he shall make an award accordingly in favor of the last employer, and such award may be enforced in the same manner as an award for compensation."

By way of defense the respondents raise the question whether the provisions of §8 allow an award of apportionment against an employer where it already has paid compensation because of the disease in question and a petition for review has been denied. In support of their position that an award is not proper in such circumstances they first argue that the section is intended to apply only to those diseases which by their nature do not cause disability until long after

they are first contracted, such as lead poisoning or tuberculosis, and the employee consequently is no longer employed or is in other employment when disability occurs.

However, §8 is part of art. VIII which deals entirely with occupational diseases and one of the diseases set out in §2 of that article as being covered thereby is the following: "28. Infection or inflammation of the skin or eyes or other external contact surfaces or oral or nasal cavities due to oils, cutting compounds, or lubricants, dust, liquids, fumes, gases or vapors." That was the occupational disease contracted by Crino. Nothing in art. VIII expressly confines its application to the type of occupational disease above referred to by the respondents, and in our opinion we should not read into it any such limitation. Some thirty-one occupational diseases are listed in §2 and the failure to name or include others constitutes the only limitation to the operation of the statute in that respect. Several of the cases cited by the respondents on this point do not involve apportionment of compensation and are otherwise distinguishable.

It is clear that §8 applies to disability due to specified occupational diseases. The section is based on the difference between a disabling instantaneous accident in one employment and an occupational disease which may develop over a period of years, during which the employee has worked for several employers, but does not become finally disabling until the exposure thereto totally incapacitates him. In such a situation the legislature evidently considered it advisable in the interest of the employee and in the speedy enforcement of his rights that he should be allowed to collect all compensation then due from the employer for whom he was working when he became incapacitated; and that such employer should then have the right to ask for proportionate apportionment from those employers for whom the employee had previously worked in the same employment and had contracted or been exposed to the occupational disease which finally caused his disability.

However, the respondents also urge that they should be granted immunity from contribution herein as they have already paid some compensation to Crino and as American might be subject to a double liability, since the agreement entered into by them is open for review in the future on a showing of any established change in Crino's condition caused by a recurrence of the original dermatitis contracted at American, provided disability followed. The rights of the present parties are now being determined under the article of the compensation act dealing with occupational diseases and not with the ordinary accidental injury. If a situation is presented where actual double liability against an employer is attempted to be enforced, which apparently is not the case here, then that issue will be before the court for adjudication.

The respondents contend that it was the intent of §8, and it should be so construed, that apportionment would apply against a prior employer in whose employment the disease was contracted only if disablement in the first instance occurred after the employee had left such employer. The statute itself contains no such express provision. The respondents have cited no case which follows such a line of reasoning or supports their claim of immunity from apportionment in the existing circumstances. However, since in our opinion the instant cause stands upon its own special facts it is not necessary for us to determine the correctness of respondents' contention just above referred to. The findings of fact in the decrees entered following the hearings on the two petitions brought by Crino against American and Esmond respectively preclude us from accepting the argument of the respondents which in substance is that no apportionment can be ordered against a prior employer for the benefit of a subsequent employer if the former has already paid some compensation to the disabled employee.

The trial justice, by his findings as set out in the decrees, decided that the dermatitis contracted by Crino at American

thereafter never entirely disappeared but that this occupationally caused condition continued in effect at all times thereafter, even though he was doing his work, until the condition finally became acute and disabling a second time while he was employed at Esmond. This appears from findings numbered 5, 7, 8, 9, 10, 11, 12 and 14 hereinbefore quoted. There is no evidence that Crino was entirely cured of the dermatitis between the time he left his employment at American, where that occupational disease was first contracted, and the time he thereafter went to work at Esmond and became disabled therefrom. Moreover no appeal was taken from the entry of the two decrees in question. They therefore are now in full force and effect and the present rights of the parties are controlled by the findings of fact and the orders set out in such decrees. Those findings establish that Crino had a continuously existing occupational disease while employed by American and Esmond.

Many of the cases called to our attention by the respondents as supporting their contentions in our opinion are distinguishable on their facts from the present cause. For example, in *Hajek* v. *Brown,* 255 App. Div. 729, and *Timpson* v. *Mowlem & Co., Ltd.,* 8 B.W.C.C. 178, the evidence showed that the second attack of the disease involved was new and that a cure had taken place between the two attacks. Also in the case last cited no question of apportionment was raised. The facts in *McGillivray* v. *Hope,* 27 B.W.C.C. 348, differ materially from those in the instant cause. The question of immunity by reason of a former payment of compensation by employers from whom apportionment was sought is not discussed, and the latter were relieved from contributing to the last employer for a reason not present herein. We find, therefore, that upon the special facts in the present record to which we have adverted no such right of immunity from contribution as is claimed by the respondents exists.

Finally the respondents argue that §7 of art. VIII provides a defense in respect to the payment of future compensation by an employer in connection with the hiring of an employee, and that the failure of the employer to avail itself of such defense should not operate to prejudice a prior employer if the question of apportionment of compensation between them is raised. The pertinent part of §7 for present purposes is as follows: "No compensation shall be payable for an occupational disease if the employee, at the time of entering into the employment of the employer by whom the compensation would otherwise be payable, or thereafter, wilfully and falsely represents in writing that he has not previously suffered from the disease which is the cause of the disability or death."

It is our opinion that the above portion of §7 has no application to the instant cause and that it furnishes no defense for the respondents to the present petition. The section concerns only the relations of the employer and its prospective employee. If the latter at the time of employment or thereafter makes in writing false statements concerning an occupational disease from which he has previously suffered then he shall receive no compensation if later he is incapacitated by such disease. There is nothing in the section, however, which requires the employer to question the employee as to whether he had previously suffered from any occupational disease nor which requires the latter to make any statement in writing if he is not willing to do so. He suffers a penalty only if he makes a false statement in that regard. There is no claim made in the present instance that any such statement was made. Upon consideration we find no error in the decision of the trial justice.

The respondents' appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Boss & Conlan, Francis W. Conlan,* for petitioner.

*Worrell & Hodge, Lee A. Worrell,* for respondents.