ACCENT STORE DESIGN, INC., et al.

v.

MARATHON HOUSE, INC., et al.

COLUMBUS DOOR CO.

v.

MARATHON HOUSE, INC., et al.

Nos. 94–330–Appeal, 94–464–Appeal.

Supreme Court of Rhode Island.

April 24, 1996.

David M. Campbell, Providence, for Plaintiff.

Michael A. Ursillo, West Greenwich, James R. Lee, Asst. Atty. General, Providence, for Defendant.

## OPINION

LEDERBERG, Justice.

These consolidated cases came before the Supreme Court on the appeal of the plaintiffs, Accent Store Design, Inc. (Accent) and Columbus Door Company (Columbus), from a summary judgment entered in the Superior Court for the defendants, Marathon House, Inc. (Marathon) and Scott Wolf, in his official capacity as the Director of the Rhode Island Governor's Office of Housing, Energy and Intergovernmental Relations (GOHEIR). At issue in the appeal is whether a subcontractor has a cause of action against a public authority that fails to require a payment bond in connection with the authority's award of a contract to a general contractor pursuant to G.L.1956 (1990 Reenactment) § 37–13–14. For the reasons stated below, we deny and dismiss the appeal and affirm the judgment of the Superior Court.

### Facts and Procedural History

The GOHEIR is a state agency within the executive department of state government authorized by G.L.1956 (1993 Reenactment) § 42–7–6 to accept any grants made available by the federal government and to enter into all necessary contracts and agreements related thereto. On or about December 7, 1989, the state through GOHEIR filed an application for federal assistance with the Department of Housing and Urban Development (HUD), requesting federal funds to assist Marathon, a nonprofit corporation, in establishing an expanded residential drug and alcohol-treatment facility. The application sought federal assistance to acquire, to renovate, and to furnish a public building on state-owned property; specifically, Marathon would own and use the building as a treatment facility.

· Because GOHEIR "anticipate[d] granting to Marathon $975,000" upon GOHEIR'S receipt of the grant from HUD, GOHEIR and Marathon executed a Memorandum of Understanding in May 1990, followed in June 1990, by a grant agreement in the amount of

$975,000 for the project. The agreement provided that GOHEIR would administer the grant in return for a $25,000 fee and identified Thunberg Industries, Inc. (Thunberg) as the general contractor for the project.

In October 1990, Accent and Columbus entered into separate subcontract agreements with Thunberg to perform work on the Marathon project. In November 1990, the property in question was deeded to Marathon by the state, although the deed was not recorded until September 1993.

In March 1991, Accent filed suit against Thunberg in Superior Court, alleging that Thunberg had breached its agreement with Accent by failing to pay Accent for the work, labor, and services it had supplied. At that time Accent did not pursue any claim against GOHEIR or Marathon. Accent received a judgment against Thunberg in the amount of $53,626.68. Thunberg, however, subsequently filed for bankruptcy pursuant to Chapter 7 of the Federal Bankruptcy Laws, and no payment or distribution was ever made to Accent.

Approximately two years after obtaining the judgment against Thunberg, Accent, and later Columbus, which had never filed suit against Thunberg, filed the instant actions against Marathon and GOHEIR. The complaints presented three causes of action against each defendant, namely, negligence for failure to comply with the Rhode Island Public Works statute, § 37–13–14; negligence for failure to comply with federal HUD regulations; and breach of a federal grant agreement in respect to the acceptance and use of federal funds from HUD.

Accent and both defendants filed motions for summary judgment in the Accent action. On May 10, 1994, the Superior Court entered judgment in favor of defendants and against Accent. On July 18, 1994, by stipulation of the parties, judgment was also entered for defendants and against Columbus. Both Accent and Columbus filed timely notices of appeal, pursuant to G.L.1956 § 9–24–1. On October 13, 1994, this Court assigned Accent's appeal to the regular calendar for full briefing and argument and one week later granted Columbus's motion to consolidate the cases.

## Standard of Review

In its review of the granting of a motion for summary judgment, this Court applies the same rules and analysis as those applied by the trial justice. *Mallane v. Holyoke Mutual Insurance Company in Salem,* 658 A.2d 18, 19–20 (R.I.1995); *Lawrence v. Anheuser–Busch, Inc..* 523 A.2d 864, 867 (R.I.1987). Accordingly, if our review of the admissible evidence viewed in the light most favorable to the nonmoving party reveals no genuine issues of material fact, and if we conclude that the moving party was entitled to judgment as a matter of law, we shall sustain the trial justice's granting of summary judgment. *Mallane,* 658 A.2d at 20; *Providence Journal Co. v. Sundlun,* 616 A.2d 1131, 1133 (R.I.1992). Moreover, a party who opposes a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions. *Manning Auto Parts, Inc. v. Souza,* 591 A.2d 34, 35 (R.I.1991).

## Failure to Comply with the Rhode Island Public Works Bonding Statute

The plaintiffs have urged this Court to concur with those jurisdictions that have interpreted their public works bonding statutes to provide a cause of action against public authorities that fail to require a bond on public works projects. The defendants, on the other hand, have argued that Rhode Island's public works bonding statute, § 37–13–14, does not provide a cause of action in the event that the state fails to require a contractor who has been awarded a public works contract to file a bond with the proper authority. We agree with defendants.

Section 37–13–14 [1] provided that:

"(a) The state or any city, town, agency, or committee therein awarding contracts for public works shall require the contractor awarded a contract with a contract

---

1. General Laws 1956 § 37–13–14 was amended by P.L.1994, ch. 384, § 1 to require a payment bond on public works projects with a contract price in excess of $5,000.

price in excess of one thousand dollars ($1000) for public works to file with the proper authority good and sufficient bond with surety furnished by any surety company authorized to do business in the state, conditioned upon the faithful performance of the contract and upon the payment for labor performed and material furnished in connection therewith, such bond to contain the terms and conditions set forth in chapter 12 of this title, and to be subject to the provisions of that chapter.

"(b) Provided, however that for good cause shown in state public works contracts, the director of the department of administration may waive the requirements of this section in regards to materials furnished only for contracts not in excess of fifty thousand dollars ($50,000)."

It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings. *Marran v. Baird*, 635 A.2d 1174, 1180 (R.I.1994); *Ellis v. Rhode Island Public Transit Authority*, 586 A.2d 1055, 1057 (R.I.1991); *O'Neil v. Code Commission for Occupational Safety and Health*, 534 A.2d 606, 608 (R.I.1987) After applying these principles to § 37–13–14, we have concluded that the statute clearly does not create any express right of action in the event that the public authority failed to require a contractor to file a payment bond with the proper authority. Moreover, a statute that establishes rights not recognized by common law is subject to strict construction. *Ayers–Schaffner v. Solomon*, 461 A.2d 396, 398 (R.I.1983) (citing *Town of North Kingstown v. North Kingstown Teachers Association*, 110 R.I. 698, 703 n. 5, 297 A.2d 342, 344, n. 5 (1972)). Strictly construed, § 37–13–14 neither prohibits the waiver of a bond nor provides a remedy if a bond has not been obtained.

▮▮▮ Because no tort remedy has been established by statute, plaintiffs have essentially asked this Court to create a new cause of action by judicial rule. We have long held, however, that the creation of new causes of action is a legislative function. *Ferreira v. Strack*, 652 A.2d 965, 968 (R.I.1995) (citing *Kalian v. People Acting Through Community Effort, Inc., (PACE)*, 122 R.I. 429, 432, 408 A.2d 608, 609 (1979)). The General Assembly could easily have exercised its power to create a cause of action for the failure to bond by simply adding a sentence or a phrase to the statute, but it chose not to do so. The plaintiffs correctly noted that subcontractors do not have mechanics' lien rights against the improved property on a public works project and argued that fairness dictates that subcontractors be afforded a right of action for the failure to bond on such projects. Whatever the merits of plaintiffs' argument in this vein, we are of the opinion that such a remedy should not be judicially created. We are inevitably led to conclude, therefore, that the absence of a remedy that could easily have been created evinces the intent of the General Assembly not to create a tort that would subject a governmental entity to liability if that entity failed to ensure that a contractor had obtained a bond.

In the absence of a right of action, the remedy most consistent with the language of § 37–13–14 suggests that subcontractors should ascertain whether a bond has been obtained, and if no such bond has been obtained by a general contractor, then the subcontractor either may refuse to work on the project or may perform the work and assume the risk inherent in an unbonded project.[2]

---

2. The defendants have argued that the Marathon project was not a public works project within the meaning of § 37–13–14. In support of their position, they have consistently maintained that the property was transferred to Marathon on November 20, 1990, the date the deed was signed by the state. Yet, when Columbus filed a notice of lien against the property, counsel for Marathon, in a June 4, 1991 letter to Columbus, affirmatively represented that the property was state-owned and emphatically stated that Columbus lacked lien rights on the project because a mechanics' lien may not be filed against the state.

It appears that, at best, the June 4 letter was disingenuous, because Marathon knew or should have known that the property was no longer owned by the state. Furthermore, as the deed was not recorded until September 1993, Columbus had no other means of knowing that the property had been transferred.

### Failure to Comply with Federal Regulations

 The plaintiffs have also asserted that defendants had negligently failed to comply with federal law and regulations. In particular, the Miller Act, 40 U.S.C. §§ 270a–270d (act), requires a bond for a federal public works project. The act, however, provides no right to sue should the governmental entity not require a bond, and the federal courts have declined to create tort liability under the act for failure to bond. In *Arvanis v. Noslo Engineering Consultants, Inc.*, 739 F.2d 1287, 1290 (7th Cir.1984), the court noted that the act "grants a very narrow and specific right" to subcontractors who are not paid for their work on a federal government project, namely, the right to sue on the bond if a bond has been obtained. The court concluded, however, that the act "places no affirmative obligation on the government and says absolutely nothing about what happens when the contractor fails to furnish a bond." *Id.* The court further noted that there was "no provision for the contingency that both the contractor and the government contracting officer will ignore the bonding requirement" but refused to fill this "gap in the statute" by creating a judicial remedy. *Id.* Thus, the federal bonding statute does not provide the basis for a claim for recovery against the state if the required bond has not been filed with the proper authority.

 The plaintiffs also asserted that defendants had breached the terms of the federal grant agreement in respect to the acceptance and use of HUD funds. Under the grant agreement, GOHEIR and Marathon represented to HUD that the grant would be administered in compliance with various federal laws and regulations, specifically with the Office of Management and Budget (OMB) circular No. A102. That circular requires a bond if the "construction contract or subcontract" exceeds $100,000. In the case before us, Columbus is owed $10,850 and Accent is owed $53,626 for work performed on the Marathon project. Because neither of the subcontracts that are the basis for this action exceeded $100,000, we conclude that no bond was required under OMB circular No. A102.

### Summary

In summary, we hold that the plaintiffs in the instant case are afforded no cause of action under state or federal law. Thus, this Court need not determine whether the Marathon contract was a public works project within the meaning of § 37–13–14 or whether Accent's claim was barred by *res adjudicata.* The defendants, therefore, are entitled to judgment as a matter of law, and hence we sustain the granting of summary judgment in favor of the defendants.

Consequently, we deny and dismiss the appeal and affirm the judgment of the Superior Court, to which we return the papers in this case.

FLANDERS, J., did not participate.