DECISION
Before this Court is the plaintiff's, Landmark Medical Center, motion for a preliminary injunction seeking an order requiring the defendants, Northern Rhode Island Rehab Management and Braintree Rehabilitation Ventures, to pay amounts alleged due under a services contract and the plaintiff's motion for summary judgment pursuant to Rule 56 of the Superior Court Rules of Civil Procedure. The defendants filed objections to both motions and filed counterclaims.
 Facts and Travel
The facts leading up to this controversy are largely not in dispute and are as follows: On January 11, 1993, Landmark Medical Center (LMC) and Braintree Rehabilitation Ventures (BRVI) entered into a partnership agreement for the purpose of operating a rehabilitation hospital, forming Northern Rhode Island Rehab Management Associates, L.P. (Rehab). Rehab is governed by a Governing Board (Board) consisting of six (6) members, of which three (3) members are appointed by BVRI and three (3) members are appointed by LMC. BRVI is designated to act as Managing General Partner.
On January 3, 1994, LMC and Rehab entered into a Purchased Services Agreement (Services Agreement) whereby LMC would provide ancillary services to Rehab. Section 4 of the Services Agreement provides for remuneration, stating that Rehab shall pay LMC "an amount to be agreed upon by the parties from time to time, which amount shall not be less than the lesser of [LMC]'s fully loaded Medicare costs . . . or the fair market value of such Services." Section 4 also provides that the fair market value shall be determined by LMC and Rehab and that the rate to be paid to LMC is to be established annually each January 1. Section 18 of the Services Agreement provides for arbitration of "any controversy or dispute between [LMC] and [Rehab] with respect to the application or interpretation of the terms of the agreement, except failure of [Rehab] to pay compensation to [LMC] as required" in the Services Agreement. An affirmative vote of at least four (4) members of the Board is required to make any material amendment to, or replacement or substitution of, the Services Agreement.
The Services Agreement was amended by the parties by letter dated November 6, 1996, and memorialized as an amendment (Services Amendment) on August 28, 1997. The Services Amendment became effective upon the opening of the Subacute Unit at LMC. Section 3 of the Services Amendment provides that if Rehab has cost-saving proposals, they will be submitted to LMC's president for review. If LMC and Rehab cannot agree on the implementation or amount of any proposals, then the proposals are to be submitted to the Board for a final determination.
In July 1998, BRVI notified LMC that it had quotes for the same type of services provided by LMC that were considerably less than the amounts LMC charged Rehab. LMC's president did not agree that the figures represented true market value for the Rhode Island area, as all of the quotes presented were for services provided outside of Rhode Island. A special Board meeting was held on October 30, 1998, to discuss the costs of services provided by LMC to Rehab. The Board voted unanimously to require that payment under the Services Agreement be "no more than the lesser of Medicare costs to LMC or fair market value" and that rates reflecting the lesser of the two costs would be implemented by January 1, 1999. The Board also voted to attempt to agree to a definition of fair market value at the next Board meeting, scheduled for November 24, 1998. As of January 1, 1999, the Board had not yet determined what constitutes fair market value for the cost of these services.
On March 2, 1999, LMC billed Rehab for services provided for the month of January 1999. Rehab has not paid that statement. On April 14, 1999, LMC filed the present action for breach of contract and breach of fiduciary duty, along with a request for preliminary injunction seeking an order requiring Rehab to pay amounts due under the Services Agreement. LMC alleges that Rehab has not paid approximately $400,000.00 per month for services provided since January 1, 1999. On May 4, 1999, Rehab answered, admitting that it had not paid the bill presented by LMC for services provided for the month of January 1999, and filed counterclaims for breach of fiduciary duty, breach of contract, breach of covenant of good faith and fair dealing, tortious interference, contribution, and unjust enrichment. On May 25, 1999, LMC filed a motion for summary judgment alleging that Rehab's counterclaims were all arbitrable issues.
 Contract Interpretation
LMC argues that the arbitration clause in Section 18 of the Services Agreement requires that all disputes, except whether payment has been made by Rehab, must be determined by arbitration. Rehab contends that it would be absurd to interpret the arbitration clause to refer to merely whether payment was made, as what amount to be paid would still need to be determined.
The issue of whether a dispute is arbitrable is a question of law. Providence Teachers' Union Local 958 v. Providence Sch.Comm., 433 A.2d 202 (R.I. 1981) (citations omitted). The Rhode Island Supreme Court stated that "[t]o determine whether the parties agreed to substitute arbitration for adjudication, we must examine the documents comprising the contract between the parties. . . ." Stanley-Bostitch, Inc. v. Regenerative Envtl.Equip., 697 A.2d 323 (R.I. 1997). Our Supreme Court has also held that "[i]f a contract is clear and unambiguous, the meaning of its terms presents a question of law for the court." Rotelli v.Catanzaro, 686 A.2d 91, 94 (R.I. 1996) (citations omitted). "Whether the terms of a contract are clear and unambiguous, is itself a question of law, and the court may consider all the evidence properly before it in reaching its conclusion." Id. "in determining whether a contract is clear and unambiguous, the document must be viewed in its entirety and its language be given its plain, ordinary and usual meaning." Id. "The main objective of the [C]ourt when construing contract terms is to determine the intent of the parties." Johnson v. Western Nat. Life Ins.,641 A.2d 47, 48 (R.I. 1994).
In the present case, Section 4 of the Services Agreement provides that the amount to be paid is to be agreed upon by the parties. Section 4 also provides that the fair market value is to be mutually determined by LMC and Rehab and that these rates are to be established by January 1. Section 18 provides that "[any controversy or dispute between [LMC] and [Rehab] with respect to the application or interpretation of the terms of this Agreement, except failure of [Rehab] to pay compensation to [LMC] as required herein, will be determined by arbitration."
Viewing the Services Agreement in its entirety, this Court finds the relevant contract language to be clear and unambiguous and, therefore, the contract language must be given its plain, ordinary and usual meaning. A plain and ordinary reading of the arbitration clause in Section 18 results in the conclusion that the parties intended to submit all disputes with respect to the application or interpretation of the terms of the agreement, except whether payment had been made, to arbitration. The amount or the payment rate to be paid to LMC by Rehab is not a question of whether payment has been made by Rehab and, therefore, must be determined by arbitration if the amount to be paid is in dispute.
 Summary Judgment
LMC argues that this Court should grant its motion for summary judgment, as the Services Agreement provides procedures for obtaining new valuation for services, and any disputes regarding valuation must be submitted to arbitration. Rehab responds that the arbitration clause in the Services Agreement requires that the value of the services must be litigated.
Summary judgment is granted when, after reviewing the admissible evidence in the light most favorable to the nonmoving party, there exists no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.Rotelli v. Catanzaro, 686 A.2d 91, 93 (R.I. 1996) (citing AccentStore Design, Inc. v. Marathon House, 674 A.2d 1223 (R.I. 1996)). The movant bears the initial burden of showing that no genuine issue of material fact exists and that, therefore, the case need not be submitted to the trier of fact. Palmisciano v.Burrillville Racing Assoc., 603 A.2d 317, 320 (R.I. 1992). However, "a litigant opposing a motion for summary judgment has the burden of proving the existence of a disputed issue of material fact." Senn v. MacDougall, 639 A.2d 494, 495 (R.I. 1994) (citing Manning Auto Parts, Inc. v. Souza, 591 A.2d 34, 35 (R.I. 1991)). "It is well settled that one who opposes a motion for summary judgment may not rest upon mere allegations or denials in the pleadings." Ardente v. Horan, 117 R.I. 254, 257-58,366 A.2d 162, 164 (1976). The litigant opposing the motion has an affirmative duty to set forth specific facts that show that there is a genuine issue of fact; if he does not do so, summary judgment will be entered against him. Id.
As this Court concludes that the contract is clear and unambiguous, and that the contract requires that all disputes between the parties, except whether payment has been made by Rehab, are arbitrable, then there is no genuine issue of material fact in dispute between the parties. The merits of the parties' claims for breach of contract, breach of fiduciary duty, breach of covenant of good faith and fair dealing, tortious interference, contribution, and unjust enrichment must be determined in arbitration. Therefore, LMC's motion for summary judgment is granted.
 Preliminary Injunction
LMC argues that this Court should issue a preliminary injunction ordering Rehab to pay the amount due for services provided under the Services Agreement. Rehab responds that LMC has been overcharging for services provided and that it has a right to offset the amount alleged to be owed.
The decision to grant or deny a preliminary injunction falls within the sound discretion of the trial justice. Fund forCommunity Progress v. United Way, 695 A.2d 517, 521 (Ri. 1997). "The issuance of an injunction and the scope and quantum of injunctive relief rests in the sound discretion of the trier of fact." DeNucci v. Pezza, 114 R.I. 123, 130, 329 A.2d 807, 811 (1974) (citing Nair v. Thaw, 242 A.2d 757 (Conn. 1968). The Rhode Island Supreme Court has articulated the well-established standard for granting or denying a preliminary injunction. "The moving party seeking a preliminary injunction must demonstrate that it stands to suffer some irreparable harm that is presently threatened or imminent and for which no adequate legal remedy exists to restore the plaintiff to its rightful position." UnitedWay, 695 A.2d at 521. "The moving party must also show that it has a reasonable likelihood of succeeding on the merits." Id.
This does not mean a certainty of success, but requires only that the moving party makes out a prima facie case. Id. Finding that there is a reasonable likelihood of success on the merits and immediate irreparable harm, the trial justice then balances "the equities of the case by examining the hardship to the moving party if the injunction is denied, the hardship to the opposing party if the injunction is granted and the public interest in denying or granting the requested relief." Id. In balancing the equities, although not conclusive, when a plaintiff has offered to post an injunction bond to compensate defendants for harm they might suffer, the balance-of-harms tips in the plaintiffs favor.SW Industries, Inc. v. Aetna Casualty Surety Co., 646 F. Supp. 819 (D.R.I. 1986) (citing Ohio Oil Co. v. Conway, 279 U.S. 813, 49 S.Ct. 356 (1929)). In considering the equities, the trial justice should bear in mind that the issuance of a preliminary injunction does not ordinarily achieve a final determination, but merely "holds matters approximate]y in status quo" and prevents irreparable harm to the rights in question. United Way, 695 A.2d at 521.
As this Court has concluded that the contract language is clear and unambiguous, and has found that all disputes or controversies, except whether Rehab has made payment as required, must be determined by arbitration, this Court finds that LMC has made a prima facie showing that it has a reasonable likelihood of success on the merits and that LMC's inability to continue operating constitutes irreparable harm. In addition, in paragraph 9 of Rehab's answer and counterclaim to LMC's complaint, Rehab admits that it has not paid the bill presented by LMC.
In balancing the equities, the court considers the harm to both the moving and nonmoving parties. United Way, 695 A.2d 521. In addition to these harms, the court considers the public interest. Id. The record indicates that Rehab is the only hospital of its kind to perform inpatient rehabilitative services in Rhode Island. Not only is the public interest great in providing continuing service to the existing patients, but also there is a great interest in future patients' needs and access to this service if the hospital is closed. If LMC cannot continue operation, or has to decrease its existing operation, this will result in layoffs at, or possible closure of, the hospital.
Therefore, considering the reasonable likelihood of success on the merits, the irreparable harm to LMC, and the balancing of the equities, including the public interest, a preliminary injunction shall issue requiring Rehab to pay LMC for services as provided under the Service Agreement.
 Conclusion
LMC's motion for summary judgment is hereby granted, as all other claims by the parties are subject to arbitration.
LMC has met its burden for a preliminary injunction to issue. As LMC has stated that it can manage to continue operations at a reduced payment of 66% of its Medicare costs until a final determination can be made, this Court orders the injunction to issue at sixty-six percent (66%) of LMC's Medicare costs for the services provided, along with LMC posting an injunction bond for any overpayment that may be subsequently determined.
Counsel shall submit the appropriate judgment for entry.