DECISION
Before this Court is the administrative appeal of Arrow Cab Company (hereinafter "appellant") from a decision of the Division of Public Utilities and Carriers (hereinafter "Division"). In its decision, the hearing officer ordered the suspension of appellant's Certificate of Public Convenience and Necessity for thirty days and revoked its authority for one taxicab. Jurisdiction is pursuant to G.L. 1956 §42-35-15.
 Facts and Travel
On March 4, 2000, upon its own motion, a duly noticed hearing was held by the Division of Public Utilities and Carriers before Hearing Officer Stevenson regarding Operating Certificate No. MC-T-7, held by Arrow Cab Company, Inc., to determine if the company operated an unauthorized taxicab in violation of Title 39, Chapter 14 of the Rhode Island General Laws. Said Chapter empowers the Division of Public Utilities and Carriers to prescribe such rules and regulations as it shall deem proper to assure adequate, economical, safe, and efficient service of common carriers. At the hearing, both parties were represented by counsel. Testimony was taken from Mr. Matthew Cimini, Motor Carrier Compliance Officer; Mr. Jose Silva, driver for Yellow Cab Company, Inc. and Mr. Joseph Bailey, part-owner of Arrow Cab Company.
At the hearing, Mr. Cimini testified that he was employed as a Compliance Officer with the Division of Public Utilities and Carriers, State of Rhode Island. (Tr. at 6) He testified that in the middle of last year, he was assigned to investigate an anonymous complaint pertaining to the appellant company. The anonymous complaint was contained in an unsigned letter received by the Division. The unknown author alleged in his letter that he was transported by a van instead of a taxicab by the appellant company and that the van had several violations including a working taximeter concealed in the glove box. (Tr. at 7) The Division mailed a copy of the unsigned letter to the appellant cab company with a Division letter that ordered the appellant to cease and desist from the alleged activity that violated PUC Rules and Regulations and which requested a response to the allegations within ten days. (Tr. at 8) Thereafter, the Division received a letter from appellant company denying the allegations contained in the letter. The Division then closed the investigation. (Tr. at 9)
Sometime thereafter, Mr. Cimini received a phone call from Mr. Silva of Yellow Cab Company, in which he stated that he witnessed an unauthorized vehicle picking up passengers downtown. He described this vehicle and its plate number to Mr. Cimini. (Tr. at 10) Mr. Cimini then checked the registration number with the Registry of Motor Vehicles and ascertained that this vehicle was a van registered to appellant cab company with a private passenger plate. (Tr. at 10-12) On October 19, 1999, Mr. Cimini observed the van with the reported plate number while he was on another assignment. (Tr. at 12) After receiving permission from Henry Ferland, Jr., the son of the appellant company owner, he proceeded to inspect the vehicle which was in the appellant's yard. (Tr. at 12-13) Mr. Cimini opened the glove box of the van and observed a working Pulsar taximeter there. (Tr. at 14, 26-27) He did not observe any rate or memorandum cards in the van nor any markings on the exterior of the vehicle. (Tr. at 15) Mr. Cimini recorded the serial number of the Pulsar meter and told Mr. Ferland, Jr. that he would hear from the Division. (Tr. at 14-16) Afterward, Mr. Cimini checked the records of the Division and confirmed that appellant company had not registered this van with the Division. (Tr. at 16)
Mr. Silva, a Yellow Cab Company cab driver, testified that he was dispatched to pick up a passenger at 7 Forest Avenue on a date he cannot recall. When he arrived there, he observed a green and white van departing with a passenger from 7 Forest Avenue. (Tr. at 54, 58-59) He wrote down the van's plate number, WJ-499, and advised Mr. Cimini at the Public Utilities and Carriers Division of the van's green and white color and plate number. (Tr. at 54-56)
Mr. Joseph Bailey, Treasurer and 50 percent shareholder of the appellant company, testified on its behalf. (Tr. at 67-68) He denied that the van in question was ever utilized to pick up passengers in downtown Providence, and to the best of his knowledge he testified that the van was not used to pick up passengers at 7 Forest Avenue. (Tr. at 71) He did admit, however, that the van was used as a transport for people from the Allens Avenue ship docking area for one of their accounts, Moran Shipping. (Tr. at 71-74)
Mr. Bailey further testified that the van was initially purchased to replace another van which had been registered as a taxicab but had been removed from the road. (Tr. at 72) He explained that the appellant company did not register the vehicle with the Division because they were anticipating changes in the rules and regulations and they wanted to wait until after the rumored changes took place. (Tr. at 73) Mr. Bailey stated that they used the unauthorized van to service a large number of people for Moran Shipping because "at certain points they have a large amount of people coming off the ships with a large amount of baggage, and therefore, it was sometimes impossible to fit all of them into a taxi vehicle or their baggage into the trunk of a taxi, being a sedan vehicle." (Tr. at 74) Mr. Bailey confirmed that payment was received for these services. (Tr. at 76) He testified that the appellant company would bill Moran Company at the end of the month for the services rendered. (Tr. at 74). The amount of the bill was determined by the applicable, metered rate. (Tr. at 75) Mr. Bailey claimed that the only utilization of the van was for this contract arrangement with Moran Shipping. (Tr. at 77) He admitted that the vehicle was not listed as a taxicab on his insurance but rather was listed as a private vehicle. (Tr. at 97)
Cross examination of Mr. Bailey revealed that the appellant was operating this van both prior to and subsequent to receiving the cease and desist letter sent by the Division (previously discussed above) which had addressed and accompanied the anonymous complaint letter pertaining to the appellant company's alleged, unauthorized use of a van. The content of the Division's cease and desist letter, submitted by the Division at the hearing and dated August 19, 1999, read in part: "The attached complaint alledges (sic) Arrow Cab used a Vehicle that is not in compliance with P.U.C. rules. If this is the case you are to cease and desist this practice immediately. Please review this complaint and reply in writing to this office by no later than August 27, 1999." Despite its use of the unauthorized van, the appellant company denied any such use in its response letter, dated August 23, 1999, which read in part: "The complaint letter that was forwarded to our Office from complaintant (sic) unknown, and the Public Utilitiers (sic) Carriers has no bases (sic), We have no idear (sic) what this person is talking or writting (sic) about."
On cross examination, Mr. Bailey admitted that the company was aware that the van was being used for the Moran Shipping carriage at the time of the August 23, 1999 letter:
 Q: Were you aware that there had been an inquiry from the Division of Public Utilities prior to August 23rd, 1999?
 A: Yes, I believe there was an anonymous letter that was forwarded from the Division with regards to a complaint about a van.
 (Tr. at 101, ll. 13-18)
 Q: Prior to August 23rd, 1999 was the management of Arrow Cab Company, Inc. aware that a van with private passenger plates was being used to transport persons for compensation through Moran Transport?
 A: The company would have been aware that the van was being used for the Moran account, yes.
 Q: Do you believe that this correspondence therefore properly — correctly reflects a response to the anonymous complaint which has been attached as Arrow Cab Exhibit 1?
 A: I have no idea.
 (Tr. at 104, 11.20 -24, and at 105, 11.1-7)
In its May 22, 2000 order, the Division found that the van used by the appellant company to transport passengers was indeed providing transportation services akin to those services traditionally provided by taxicabs and/or limited public motor vehicles, pursuant to G.L. 1956 § 39-14-1. The basis for this finding, as stated in the order, were the admissions made by Mr. Bailey relative to the transportation services provided for Moran Shipping and the observations of Mr. Silva regarding the transportation services provided at 7 Forest Avenue in Providence. Additionally, the Division based this finding on record evidence that appellant was utilizing a taximeter in the glove compartment for purposes of billing Moran Shipping for the transportation services being provided.
As a result of the finding of unauthorized use of a taxicab and on the record evidence of the case, the Division found that appellant violated the following laws:
 1. G.L. § 39-14-4.2 — failure to register a vehicle as a taxicab
 2. G.L. § 39-14-7 — failure to display certificate memorandum
 3. G.L. § 39-14-15 — failure to display photograph of operator
 4. G.L. § 39-14-16 — failure to post schedule of fares
 5. G.L. § 39-14-17 — failure to display name of owner
 6. G.L. § 39-14-18 — failure to provide proof of financial responsibility
 7. Rule E1 — failure to satisfy taximeter requirements
 8. Rule G(2) — failure to notify Division of new or replacement taxicabs.
Predicated on these findings, the Division imposed a thirty-day suspension of appellant company's Certificate of Public Convenience and Necessity and revoked appellant company's authority for one taxicab. The appellant filed this timely appeal of the Division's decision on June 7, 2000, and argues that the decision should be reversed for the following reasons: 1. The appellant company did not intend to deceive the public; 2. The findings of violations on behalf of the appellant company were not substantially evidenced by the record; 3. The Division failed to follow its own rules and regulations; and 4. The penalty imposed by the Hearing Officer was an abuse of discretion.
 Standard of Review
The review of a decision of the Board by this court is controlled by G.L. § 42-35-15(g), which provides for review of a contested agency decision:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Comm'n, 509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the PUC's decision. Newport Shipyard v. Rhode Island Comm'n for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897 (quoting Caswell v. George Sherman Sand Gravel Co., 120 R.I. 1981, 424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berberian v. Dep't of Employment Sec., 414 A.2d 480 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody v. R.I. Conflict of Interest Comm'n, 509 A.2d at 458. The Superior Court's role is to examine whether any competent evidence exists in the record to support the agency's findings. Rocha v. Public Utilities Commission, 694 A.2d 722, 726 (R.I. 1997). The Superior Court is required to uphold the agency's findings and conclusions if they are supported by competent evidence. Rhode Island Public Telecommunications Auth., et al. v. Rhode Island Labor Relations Board, et al., 650 A.2d 479, 485 (R.I. 1994).
 Intent to Deceive the Public
The appellant argues there was no evidence adduced at the hearing which establishes that appellant used the unauthorized van in a manner that deceived the public, other than the "dubious testimony of Silva and an anonymous letter that likely was written by Silva" (Appellant's memorandum at 8). In fact, the appellant argues, Mr. Bailey denied at the hearing that the van transported the general public; instead, he testified that the van serviced only passengers for one of appellant's accounts, Moran Shipping. Since the passengers from Moran were not paying for the transportation, the appellant contends they were not being harmed by the placement of the taximeter in the glove box.
Counsel for the Division of Public Utilities and Carriers counters that it is irrelevant whether appellant transported the general public in a deceitful manner because there is no authority which requires a finding of deceit in order for the violations at issue to ensue. The Division contends that the real issue is whether the vehicle transported passengers for compensation, which was conclusively determined at the hearing when Mr. Bailey admitted that the appellant company received money from Moran Shipping for the transport of its passengers.
Section 39-14-2 of the General Laws of Rhode Island, entitled "Powers of division", provides:
 "Every person owning or operating a motor vehicle engaged or to be engaged in operating a taxicab or limited public motor vehicle is declared a common carrier and subject as such to the jurisdiction of the division of public utilities and carriers." Section 39-14-1 of the General Laws of Rhode Island defines the terms, "taxicab" and "limited public motor vehicle".
 A "taxicab" is defined as:
 "every motor vehicle for hire, other than a jitney as defined in § 39-13-1, equipped with a taximeter, used for transporting members of the general public for compensation to any place within this state as may be directed by a passenger on a call and demand basis, when the solicitation or acceptance of the passenger occurs within the location named in the certificate; provided, that the vehicle's driver may, if and when solicited on a public highway at any location at which he or she is discharging a passenger; which location is not shown in the certificate, provide transportation from the location only to a place named in the certificate." G.L. § 39-14-1(7) (Emphasis added.)
 A "limited public motor vehicle", on the other hand, is defined as: "every motor vehicle for hire, other than a jitney, as defined in § 39-13-1, or a taxicab, as defined in this chapter, equipped with a taximeter used for transporting members of the general public for compensation only from a designated location on private property to such points as may be directed by the passenger. G.L. § 39-14-1(4) (Emphasis added.)
A review of the record indicates the Division had before it reliable, probative, and substantial evidence that the vehicle was servicing the general public in the capacity of either a taxicab or limited public motor vehicle. In his May 22, 2000 order, the Hearing Officer found the appellant's van was providing transportation services akin to those services traditionally provided by taxicabs and/or limited public motor vehicles, pursuant to G.L. § 39-14-1. He based this finding upon the admissions made by Mr. Bailey relative to the transportation services provided for Moran Shipping and the observations of Mr. Silva regarding the transportation services provided at 7 Forest Avenue in Providence. Additionally, he relied upon record evidence that appellant was utilizing a taximeter in the glove compartment for the purpose of billing Moran Shipping for the transportation services being provided. The Division also heard Mr. Bailey's testimony, that the van in issue replaced a vehicle that was registered as a taxicab. The appellant had only neglected to register the replacement vehicle because, according to Mr. Bailey's testimony, the appellant wanted to wait until after rumored changes in the rules and regulations took place. Furthermore, evidence in the record indicates that the appellant received a cease and desist letter pertaining to use of an unauthorized van from the Division at a time the appellant was operating the van in issue. Nonetheless, the appellant denied such use in the response letter to the Division all the while continuing, admittedly, to service Moran Shipping with the unauthorized van.
As indicated above, the Division also heard the testimony of Mr. Silva, who stated that he observed a green and white van departing with a passenger from 7 Forest Avenue, and that he thereafter informed Mr. Cimini of Public Utilities of the van's description and plate number which was later determined to belong to the appellant company. It is not for a reviewing court to determine the credibility of witnesses. Rather, credibility is a determination for the hearing officer who has the opportunity to view the demeanor of the parties. A reviewing court will not weigh the credibility of witnesses and substitute its judgment for that of the agency. See, Costa, supra. A review of the record indicates the Division had before it reliable, probative, and substantial evidence that the vehicle was servicing the general public in the capacity of either a taxicab or limited public motor vehicle.
Whether or not the appellant had an intent to deceive the public is irrelevant to the hearing officer's findings of the statutory violations. A review of the applicable sections of the statute reveals the consistent use of the word "shall." "It is well-settled that when the language of the statute is clear and unambiguous, the Court must give the words of the statute their plain and ordinary meanings." Accent Store Design, Inc. v. Marathon House, Inc., 674 A.2d 1223, 1226 (R.I. 1996) In the instant case, the use of the word "shall" in the enabling statute mandates strict liability for the listed offenses. No mental state is required for the statutory violations to arise. Accordingly, the appellant's argument that the law requires an intent to deceive on the part of the violator fails.
 Substantial Evidence of the Statutory Violations
The appellant contends that several of the findings of statutory violations by the hearing officer are "utterly unsupported" by the record. First, appellant argues that there was no evidence to warrant the finding that the taximeter was not sealed by the Weights and Measures Mercantile Division of the Department of Labor in violation of the agency's Rule (E)(1). The appellant cites the testimony of Mr. Cimini, who stated that he did not remember whether the meter he observed in the glove compartment was sealed by the Weights and Measures Mercantile Division of the Department of Labor.
The Division argues that the standard on review is whether there is some or any evidence which could support a reasonable inference that the taximeter was not sealed. The Division further argues that this standard has been met because there was evidence that the taximeter was concealed in a glove compartment, in violation of Division rules that all meters be in full view of passengers. The Division contends that it was reasonable for the hearing officer to infer that the State Department of Weights and Measures would not have sealed the concealed taximeter in issue. Furthermore, the Division argues, the appellant has offered no proof to rebut the reasonable inference that the taximeter was unsealed.
Rule E(1) sets forth various requirements for the use of taximeters. Several of these requirements are relevant to the instant case:
 Rule E(1)(i): "All taximeters used in accordance with the rules and regulations stated herein shall be inspected by Weights and Measures each year for proper calibration and function."
 Rule E(1)(ii): "once inspected and approved by the Weights and Measures personnel, the taximeter will be officially sealed by the Weights and Measures personnel. No passengers shall be transported without an officially inspected, approved, sealed, and operating taximeter. . . ." (Emphasis added.)
 Rule E(1)(v): "No taximeter shall be installed in such a manner that prohibits the visual inspection of the meter and seal."
 Rule E(1)(vii): "A taximeter shall be installed so that the fare numerals can be easily read by a person of normal vision from the rear seat. . . ."
 Rule E(1)(viii): "The serial number of the taximeter shall be the same as that shown on the rate card/memorandum certificate assigned to the cab, except where a temporary replacement meter is being used pursuant to these rules and regulations."
The record reveals that not only was the taximeter in issue contained in the glove box of an unauthorized vehicle in violation of PUC Rule E(1)(v) and (vii), but also that Mr. Cimini observed no memorandum or rate cards in the vehicle upon his inspection. It was reasonable for the Division to infer that a taximeter, concealed in a glove box of an unauthorized vehicle would not have passed the inspection required of Rule E(1) so as to have earned the taximeter seal.
Next the appellant refutes the finding that it lacked adequate insurance coverage for the van in issue in violation of § 39-14-18(a) of the Rhode Island General Laws. The appellant argues that there was no competent evidence presented below by the Advocacy Section on this point. Counsel for the Division submitted the testimony of Mr. Bailey, who admitted that the vehicle in issue was not included on appellant's taxicab insurance policy. Mr. Bailey testified that the van was registered as a private passenger vehicle.
Additionally, the appellant argues that the following violations — G.L. § 39-14-15, failure to display photograph of operator; G.L. § 39-14-16, failure to post schedule of fares; G.L. §39-14-17, failure to display name of owner — are also not supported by the substantial evidence of record. With respect to these violations, the appellant argues "the Advocacy Section merely presented testimony from Cimini that while the van was parked it did not have a certificate memorandum or operator photograph. This does not mean, however, that while the van was being used that it did not contain these documents. In fact, it makes perfect sense that neither document would be left in the van while it was not operational." (Appellant memorandum at 10) The Division responds that such violations of the statutory provisions can be reasonably inferred from the record.
This Court holds that the findings of violations with regard to §§39-14-15, 39-14-16, 39-14-17, and 39-14-18, as set forth in the May 22, 2000 order of the Division, are in excess of the agency's statutory authority. Section 39-14-12, entitled "Administrative powers," limits the Division's authority to specific provisions: "The division is authorized to make such rules and regulations, to hold hearings, and issue certificates as may be required under the provisions of §§ 39-14-1
— 39-14-14 and §§ 39-14-25 — 39-14-26." This authority, according to the plain meaning of the statute, is expressly limited to the enumerated sections and thus excludes sections §§ 39-14-15
— 39-14-20, which are separately provided for by the statute under § 39-14-21, which covers applicable penalties for violations; and § 39-14-22, which provides for enforcement by the assistant director for motor vehicles. Section 39-14-21 provides: "[a]ny person, firm, or corporation violating any of the provisions of §§ 39-14-15 —39-14-20 shall, upon conviction, be fined not less than fifty dollars ($50.00) nor more than two hundred dollars ($200) for each violation." Enforcement of these sections is established in § 39-14-22: "The assistant director for motor vehicles shall enforce the provisions of §§ 39-14-15 — 39-14-20."[1] The language of § 39-14-21 is clear on its face that violations of these sections are to be established following a criminal conviction which affords a "beyond a reasonable doubt" standard of proof to the defendant. See, State v. Brown,97 R.I. 95, 196 A.2d 138 (1963) (criminal action was prosecuted under a "beyond a reasonable doubt" standard of proof for violation of §39-14-20). In contrast, § 39-14-12, addressed above, evidences a legislative intent for administrative resolution of violations of §§39-14-1 — 39-14-14 and §§ 39-14-25 — 39-14-26 based upon a preponderance of the evidence standard of proof.
Section 39-14-11, which governs the penalties applicable to violations within the agency's authority, reads:
 "Any person or officers of any association or corporation who shall violate any provision of §§ 39-14-1 — 39-14-14, 39-14-25 and 39-14-26, or any order, rule, or regulation adopted or established under any provision, shall be fined not more than one hundred dollars ($100) or imprisoned not more than sixty (60) days or both, and his or her certificate may be revoked, and the violation shall be a separate and distinct offense for each day during which it shall continue." G.L. § 39-14-11.
This Court need not address the constitutional validity of imprisonment as a civil sanction at this time as this issue is not presently before the Court. Nonetheless, the law provides for compulsory confinement in many different areas without making some criminal, so long as the detention is for a non-punitive purpose and ends with that purpose. Brown v. Multnomah County, 280 Or. 95, 570 P.2d 52 (i.e. in securing material witnesses or aliens awaiting deportation). It is the punitive use of detention, not the detention as such, that defines the criminal offense. Id. Likewise, the penalty of a loss of a license does not make an offense "criminal" so long as the deprivation is regulatory and not punitive. Id.
 The Division's Alleged Failure to Follow Its Own Regulations
The appellant also alleges that the Division failed to follow Rule L of the PUC's Rules and Regulations when it commenced an investigation after receipt of a phone call and anonymous, unsigned complaint. The appellant argues that Rule L requires a signed complaint containing the complainant's address and telephone number in order for an investigation to commence. The Division responds that while the Division will not proceed to a fitness hearing based solely upon a complaint that was not filed in writing, Rule L does not limit the authority of the Division to investigate any information it may receive and thereafter proceed to a hearing based upon the results of the investigation.
Rule L states in pertinent part: "Any person may file a complaint with the Division regarding a violation of these rules and regulations. Complaints shall be in writing and shall be signed by the complainant. . . ." The enabling statute, however, also confers authority to the Division to commence its own investigations. Section 39-14-2 of the Rhode Island General Laws, entitled Powers of division, states:
 "Upon complaint or upon his or her initiative, the administrator may investigate or conduct a hearing as to compliance by any common carrier with the provisions of this title or regulations promulgated pursuant thereto, and shall issue such orders as his or her findings shall indicate to be necessary or desirable for the public welfare." G.L. § 39-14-2
(Emphasis added.)
Thus the Division did not act in excess of its statutory authority of the agency or upon unlawful procedure in this regard.
 Abuse of Discretion
The appellant also argues that the penalty imposed upon the appellant company, namely a thirty-day suspension of its Certificate of Public Convenience and Necessity and a revocation of one taxicab, constitutes an abuse of the hearing officer's discretion. The powers of the division of Public Utilities and Carriers are set forth in G.L. § 39-14-2, which reads in part: "the administrator . . . shall issue such orders as his or her findings shall indicate to be necessary or desirable for the public welfare."[2]
The plain and clear language of the statute evidences that the hearing officer may revoke the company's certificate in its entirety for the enumerated violations and that a separate violation will arise for each day during which the violation continues. Therefore, it was within the Hearing Officer's discretion to issue the less severe penalty of a suspension and/or partial revocation for the enumerated violations which have been substantiated by the record. The record evidences that the operation of the subject vehicle continued for a substantial length of time, despite the appellant's company's knowledge of the rules and regulations of the Division and despite the company's receipt of a cease and desist letter. The certificate of the appellant company was also previously suspended for failure to comply with a prior order of the agency. The purpose of the Division pursuant to § 39-14-2 is to regulate common carriers so as to provide services necessary or desirable for the public welfare. In determining the appropriate penalty for the appellant's violations so as to protect the general public, the agency did not abuse its discretion in considering the severity of the violations as well as the appellant's past history of violations. However, counsel for appellant argues that the order which revoked its authority for one taxicab so that after amendment, the Appellant's Certificate would reflect authority to operate five taxicabs, instead of the currently authorized six taxicabs, is based upon a mistake. Counsel for appellant states in his memorandum that the appellant company is currently authorized for 16 taxicabs, as opposed to six, despite Mr. Bailey's testimony to the contrary. The Division contends that the records of the Division reflect 16 authorized taxicabs, of which 10 are dormant, and thus the penalty imposed is proper.
As this issue was not before the hearing officer at the time he rendered his order, this Court remands the portion of the order which revoked one taxicab for further consideration on the issue of whether the number of authorized vehicles for the appellant company was six or sixteen at the time of the hearings before him and for clarification as to the penalty imposed.
 Conclusion
The Court finds the findings set forth in the order of Hearing Officer Stevenson regarding G.L. § 39-14-4.2, failure to register a vehicle as a taxicab and § 39-14-7, failure to display certificate memorandum, are supported by the reliable, probative, and substantial evidence of record. Accordingly, these findings are affirmed. The Division's findings of statutory violations — G.L. § 39-14-15, failure to display photograph of operator; G.L. § 39-14-16, failure to post schedule of fares; G.L. § 39-14-17, failure to display name of owner; G.L. § 39-14-18, failure to provide proof of financial responsibility — exceed the Division's statutory authority and are reversed. The Division's finding of violations of Rule E1, failure to satisfy taximeter requirements; and Rule G(2), failure to notify Division of new or replacement taxicabs, which are within the statutory authority of the Division and are substantially evidenced by the record, are affirmed.
The matter is remanded to the Division for consideration by the Hearing Officer of appropriate penalities in light of this decision without limiting the generality of the foregoing the question of whether the revocation of authority as to one taxicab was appropriate.
Counsel for appellant is directed to submit an order consistent herewith.
[1] This position is created pursuant to G.L. § 42-13-2(6) within the Department of Transportation.
[2] Additionally see the language of G.L. § 39-14-21 quoted at page 14, supra.