EXTRUSIONS INC., WIN–
VENT DIVISION

v.

NATIONAL GRANGE MUTUAL
INSURANCE COMPANY.

No. 2002–481–Appeal.

Supreme Court of Rhode Island.

June 9, 2003.

David P. DeStefano, Providence, for Plaintiff.

David M. Campbell, Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This is an action to recover money on a payment bond. The plaintiff-subcontractor, Extrusions, Inc., Win–Vent Division (Win–Vent), appeals from a Superior Court judgment entered as a matter of law in favor of the defendant-surety, National Grange Mutual Insurance Company (National Grange).

Win–Vent supplied windows for a school-construction project involving Toll Gate High School and other public schools in Warwick (the project). National Grange issued performance and payment bonds for the project to Berkshire Construction Services, Inc. (Berkshire), the project's "Construction Manager." In that capacity, Berkshire subcontracted "the window portion" of the project to another subcontractor, Graham Glass, Inc. (Graham), for $173,290. Win–Vent supplied windows to Graham in four separate shipments, resulting in a total amount owed to Win–Vent of $73,468.

On November 17, 1998, Berkshire issued a check for $50,000 payable to Graham and Win–Vent. Win–Vent applied $26,930 from this payment to the amount it was owed for the windows, leaving a balance of $46,538. Thereafter, Graham petitioned for bankruptcy on March 17, 1999, which the trustee classified as a "no asset" case. This left Win–Vent with an unpaid balance due of $46,538 on its contract with Graham. Win–Vent notified National Grange of its claim in that amount, and then initiated this lawsuit against National Grange to recover on the payment bond it had issued as the surety for Berkshire.

In due course, both parties moved for judgment as a matter of law in the Superior Court, asking the trial justice to rule on whether Win–Vent was a proper claimant under the payment bond. Berkshire argued that an addendum to its contract with the Warwick School Committee limited the scope of the payment bond only to construction-management services and specifically required subcontractors such as Win–Vent to provide their own bonds. As a result, Berkshire argued, Win–Vent was not a proper claimant under the payment bond. Win–Vent countered that Berkshire later eliminated individual bonds covering subcontractor work from the contract in an effort to reduce the overall price of the project. Win–Vent argued that Berkshire should not be allowed to remove the requirement of individual subcontractor bonds and then argue that these subcontractors were not proper claimants under the payment bond issued by National Grange. Further, Win–Vent maintained, regardless of any limiting language in Berkshire's contract with the local school authority, it was entitled to make a claim on the payment bond under G.L.1956 § 34–28–30.

The motion justice ruled that even though the payment bond that National Grange issued covered Berkshire's construction-management services, it did not extend to include the work of the various subcontractors on the project, such as Win–Vent. Win–Vent appealed from the judgment that the court entered in favor of National Grange. A single justice of this Court ordered the parties to show cause why we should not resolve the appeal summarily. Because they have not done so, we shall decide the appeal at this time.

■ On appeal, Win–Vent argues, *inter alia,* that § 34–28–30 provides a remedy against "any bond" for subcontractors such as Win–Vent that have not been paid on this type of construction project. Section 34–28–30 provides, in pertinent part:

"If any bond is given to secure payment for work done or materials furnished on account of the construction, erection, alteration, or reparation of any building, \* \* \* *or other improvement or on account of any contract between the owner or lessee or tenant of the land on which the improvement is or shall be constructed, erected, altered, or repaired and any other person, the bond shall enure to the benefit of any person who does any work in the construction, erection, alteration, or reparation thereof, or who furnishes any materials used for that purpose, and the person doing the work or furnishing the materials may bring suit in his or her own name on the bond against any party thereto,* \* \* \* *notwithstanding the fact that he or she is not a party to the bond* or to the contract between the owner or lessee or tenant and other person, \* \* \* and further, notwithstanding the fact that he or she did work or furnished materials for use on any subcontract, mediate or immediate, to such contract between the owner or lessee or tenant and the other person." (Emphasis added).

Berkshire argues that the trial justice correctly ruled that Win–Vent was not a proper claimant on the payment bond, citing language in the first addendum to its contract with the Warwick School Committee, dated March 13, 1997, which said that "[t]he bond for construction management shall be for management services only, not for the full contract price. Subcontractors shall bond themselves for the extent of their work. They shall purchase bonds payable to Warwick Public Schools." Notwithstanding this language in Berkshire's contract with the school committee, the $566,460 payment bond that Berkshire obtained from National Grange, dated May 27, 1997, contained no such limitation. Rather, it provided, in pertinent part, as follows:

"WHEREAS, the said Principal [Berkshire] has entered into an agreement with the Obligee [Warwick Public Schools] for Construction Management Services at Various Schools \* \* \*.

"The Principal and Surety [National Grange] further jointly and severally agree with the Obligee that *every person, co-partnership, association or corporation who, whether as subcontractor or otherwise has furnished material or supplies or performed labor in the prosecution of the work as above provided and who has not been paid therefore may sue in assumpsit on this bond* in the name of the Obligee, for his, their, or its use, prosecute the same to final judgment for such sum or sums as may be justly due him, them or it, and have execution thereon provided, however, that the Obligee shall not be liable for the payment of any costs or expense of any such suit." (Emphasis added.)

Other than the one-line reference to the agreement between the Obligee (Warwick Public Schools) and the Principal (Berkshire) as one for "Construction Management Services at Various Schools," the bond did not incorporate the limiting language of the contract's first addendum into the scope of its coverage, even though National Grange issued the bond two months after the addendum. Thus, by its own terms, the later-issued payment bond not only failed to limit the scope of its coverage to just construction-management services, but also it specifically allowed subcontractors such as Win–Vent to sue on the bond "in assumpsit" for supplies, mate-

rials, and labor that they furnished "in the prosecution of the work" on the project and for which they have not been paid.

Moreover, in *Bethlehem Rebar Industries, Inc. v. Fidelity and Deposit Company of Maryland,* 582 A.2d 442 (R.I. 1990) (*Bethlehem Rebar*), this Court held that regardless of who served as the general contractor in that case, the subcontractor providing materials for the job would be entitled to recover under § 34–28–30 because that statute provided a remedy for a supplier of labor and/or materials to recover on a bond, in addition to the remedy provided for in G.L.1956 chapter 12 of title 37. *Bethlehem Rebar,* 582 A.2d at 445 (citing *Providence Electric Co. v. Donatelli Building Co.,* 116 R.I. 340, 346, 356 A.2d 483, 486 (1976)). This same analysis applies to the facts in this case.

Thus, Win–Vent in this case should have been able to proceed against National Grange in its capacity as Berkshire's surety pursuant to § 34–28–30, despite (1) the lack of privity between Win–Vent and National Grange, (2) the fact that Berkshire referred to itself as a construction manager rather than as a general contractor in the underlying contract documents, and (3) the limiting language of the first addendum to Berkshire's contract with the school committee. Section 34–28–30 provides a remedy for unpaid subcontractors to sue on "*any* bond [that] is given to secure payment for work done or materials furnished on account of the construction, erection, alteration, or reparation of any building * * *." (Emphasis added.) Thus, even if the bond had been limited to Berkshire's "Construction Management Services"—instead of, as it was written, in favor of any party who furnished labor, materials or supplies "in the prosecution of the work as above provided"—it still would fit within this statutory description of the type of bonds that are subject to the stat-

ute's coverage because the bond secured payment for the "work done" on account of the project, including "work done" in the nature of construction-management services. Thus, this bond fell squarely within the language of § 34–28–30. In any event, the wording of the payment bond itself, executed *after* the addendum that attempted to limit the scope of the bond to construction-management services, specifically provided unpaid subcontractors such as Win–Vent with the right to sue on the bond.

On appeal, National Grange relies to a great extent on *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223 (R.I.1996) (*Accent*), to support its contention that Win–Vent may not recover on the bond. The facts in *Accent,* however, are distinguishable from those here. *Id.* at 1224–25. In *Accent,* this Court addressed the issue of whether a subcontractor on a public-works project could maintain an action against a public authority that failed to require a general contractor to obtain a bond pursuant to G.L.1956 § 37–13–14. *Accent,* 674 A.2d at 1224. The subcontractors in *Accent* were left without a remedy when the general contractor went bankrupt after they obtained a judgment against the contractor for their work, labor, and services. *Id.* at 1225–26. The subcontractors then filed suit against the governmental owner of the project, alleging that it was negligent in failing to comply with the public-works statute. *Id.* at 1225. But this Court held that the language of the statute provided no such remedy. *Id.* at 1226. Furthermore, we cautioned subcontractors to ascertain whether the public authority had obtained a bond for the project before they began to work on such jobs. *Id.* The situation here is different, however, in that Win–Vent did not sue any public authority for failing to require Graham or Berkshire to obtain a bond. Rather, it sued National Grange,

the bonding company, as per § 34–28–30, in its capacity as the surety that issued the payment bond for this project.

Accordingly we sustain Win–Vent's appeal, vacate the judgment, and remand this case for further proceedings consistent with this opinion, thereby allowing Win–Vent to proceed to litigate its claim against National Grange for $46,538 plus interest.

Justice FLAHERTY did not participate.