DECISION
The State filed a Criminal Information against the defendant, Karen O'Rourke, alleging in Count I, that she stole a controlled substance in violation of G.L. 1956 § 21-28-4.14.1, and, in Count II, that she abused patient Charles Karnolt, in violation of G.L. 1956 § 23-17.8-1. The defendant filed a motion to dismiss Count II for lack of probable cause pursuant to Super. R. Crim. P., Rule 9.1.
 FACTUAL BACKGROUND
The factual allegations supporting the charge, as gleaned from the Criminal Information package, are as follows:
On September 25, 2008, Westerly Hospital Nurse Karen O'Rourke (defendant) withdrew 4mg of dilaudid, a liquid opiate administered through a patient's saline drip bag, from the hospital's Pyxis for 90 year-old patient, Charles Karnolt. Defendant noted in the patient's chart that she had administered the drug. Nursing Supervisor, Eric Bergeson — who knew defendant was being investigated based on several suspicious narcotics-related incidents — noticed the dilaudid withdrawal while using Pyxis for an unrelated purpose. Bergeson checked on the patient, and found him complaining of intense pain despite having complained and requested medication from defendant over *Page 2 
two hours earlier. The saline bag was brought to the laboratory where a "rapid test" for opiates proved negative. Further testing at the Rhode Island Forensic Science Laboratory was reportedly negative for dilaudid.
 STANDARD OF REVIEW
"When considering a defendant's motion to dismiss brought pursuant to Rule 9.1 of the Super. R. Crim. P., this Court must review the Criminal Information package and attached exhibits to determine `whether there is probable cause to believe that the offense charged was committed and that the accused had committed it.'" State v.Paolantonio, 2006 WL 2406735, *1 (R.I. Super. 2006) (quotingState v. Reed, 764 A.2d 144, 146 (R.I. 2001)). "The probable cause standard applied to a Motion to Dismiss is the same as the one that is applied to determine the propriety of an arrest."Reed, 764 A.2d at 146. The Rhode Island Supreme Court has held that "probable cause to arrest exists when the facts and circumstances . . . are sufficient to warrant a reasonable person's belief that a crime has been committed and that the person to be arrested has committed the crime." State v. Kryla,742 A.2d 1178, 1182 (R.I. 1999).
 The Statute
The Rhode Island Abuse in Health Care Facilities Act prohibits abuse, mistreatment, or neglect against a patient or resident of any healthcare facility. § 23-17.8-1 et seq.
"Abuse" means: Any "assault" . . . or "any conduct which harms or is likely to physically harm the patient." § 23-17.8-1(a)(1)(i-iv). *Page 3 
"Neglect" means the intentional failure to provide treatment, care, goods, and services necessary to maintain the health and safety of the patient." § 23-17.8-1(f).
 Defendant's Argument
Defendant argues that the statute expressly distinguishes betweenaffirmative acts causing harm, which constitute abuse, andfailures to act, which constitute neglect. Accordingly, defendant claims that the State has no probable cause to charge her with patient "abuse" where she is alleged to have failed to administer medication to a patient because the alleged failure to treat can only constitute neglect.
 The State's Argument
The State claims that the statute's definition of "abuse" as "any conduct which harms . . . the patient" pertains unequivocally to the defendant's "conduct" of withdrawing medication for the patient but not giving it to him, especially in light of the fact that defendant noted in the patient's chart that she had administered the medication. § 23-17.8-1(iv).
 ANALYSIS
The issue is whether the facts alleged, i.e., defendant's failure to give the uncomfortable patient his medicine, but nonetheless noting in his chart that she had — may constitute "abuse" under § 23-17.8-1(a)(1).
"When the language . . . is clear and unambiguous, the Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." Accent Store Design,Inc. v. Marathon House, Inc.,674 A.2d 1223, 1226 (R.I. 1996) (citations omitted). "Conduct" ordinarily means "behavior, . . . whether by action or *Page 4 
inaction;" the manner in which a person behaves (Black's Law Dictionary, 8th Ed. 315). A failure to act may constitute "conduct," and when such a failure "harms or is likely to physically harm the patient," the failure is properly chargeable as "abuse" as proscribed by § 23-17.8-1(a)(1)(iv).
The defendant cautions that to not limit cases of "abuse" to affirmative acts renders the statutory prohibition of "neglect" surplusage. However, defendant's concern is unwarranted because "abuse" requires an additional element that "neglect" does not. Abuse requires "conduct that harms or is likely to physically harm a patient." Id. Neglect requires "the intentional failure to provide treatment, care, goods, and services necessary to maintain the health and safety of the patient." § 23-17.8-1(f). The "harm" element is unique to abuse. Thus, passive conduct that results in harm or a high risk of harm to a patient may be charged as either abuse or neglect.
Examination of the State's Criminal Information package in the case at bar reveals sufficient evidence to warrant a reasonable person's belief that the crime of patient abuse has been committed and that defendant has committed the crime. State v. Kryla,742 A.2d at 1182. It contains evidence that would support a finding that defendant failed to medicate the patient and that that failure caused him harm or was likely to cause him harm. Pharmacy records showing that defendant withdrew the dilaudid, nursing supervisor Patricia Miller's testimony regarding a conversation she had with defendant in which defendant said she had given the patient the dilaudid, and both the hospital and State's laboratory tests showing no dilaudid in the patient's saline bag, support a finding that defendant withdrew — but failed to administer — the dilaudid to the patient. As for the element of harm, both supervisors Patricia Miller and Eric Bergeson maintain that they *Page 5 
checked on the patient hours after defendant was supposed to have medicated him only to find him, still complaining of severe pain and noting that he had already requested pain medication from defendant but felt no relief.
For the foregoing reasons, the defendant's motion to dismiss is denied.