DECISION
The above entitled matter is before the Court for two rulings. The first is a ruling on whether certain records maintained by the Workers Compensation Court are public records as defined by the Access to Public Records Act, G.L. 1956 § 38-2-2. The second is a ruling on the question of whether the plaintiffs should be permitted to engage in discovery in the context of their claims brought pursuant to the Access to Public Records Act, G.L. 1956 § 38-2-1, et seq. Because this justice's rulings will be dispositive of the case, a written decision is appropriate. In rendering this decision, this justice, in part, draws upon earlier rulings in the case for the reason that many of the issues are overlapping.
 FACTS AND TRAVEL
The complaint in this case was filed on May 17, 2001 pursuant to the Access to Public Records Act ("APRA"), G.L. 1956 § 38-2-1, et seq. In their complaint, the plaintiffs sought declaratory relief, injunctive relief, and punitive damages. The events leading up to the filing of the complaint are as follows.
On February 13, 2001 the plaintiff, Operation Clean Government, Inc. (OCG or plaintiff), made a written request to the administrator of the Workers Compensation Court for certain records. The request was for
 "[a]ll records in your care, custody and /or control which document, memorialize or otherwise record the attendance of Robert Arrigan at the Workers Compensation Court including but not limited to dockets, time sheets, memoranda, spread sheets, ledgers, lists, attendance sheets, electronic entries in any form as defined by the statute for the period January 1, 1999 to the present."
In the request, OCG indicated that it was not requesting to copy the entire body of records but instead preferred to examine the original records to determine which should be copied.
On February 22, 2001, Robert Arrigan, chief judge of the Workers Compensation Court (Chief Arrigan), responded to OCG's request in writing. He informed OCG that dockets are not produced in the ordinary course of business but that he would instruct the Court's data supervisor to determine the cost of generating them and would then provide that information to OCG so it could determine what data it desired. He also informed OCG that as to its request for time sheets, spread sheets, ledgers, lists, attendance sheets and electronic entries, no such records are maintained relative to judges. He further informed OCG that the Workers Compensation Court does maintain a record of current vacation time available to the active members of the Court. One day later, Chief Arrigan provided OCG with a copy of a memorandum from the data supervisor, itemizing the cost of printing and copying the docket sheets when help was available after hours and on weekends.
On March 8, 2001, OCG wrote to Chief Arrigan advising him that it was not interested in the court dockets but, instead, was interested in two groups of records that it contended were public records but had not been identified by Chief Arrigan in his correspondence of February 22, 2001. Those records have come to be known as the "Revens" documents and the "Healy" documents. The Revens documents were documents that OCG believed were in the custody of Dennis Revens, Administrator of the Workers Compensation Court. The Healy documents were documents that OCG believed were in the custody of Theresa Healy, secretary to Chief Arrigan. On March 9, 2001, Chief Arrigan responded indicating that such records were not public records within the meaning of the APRA and he refused to produce them.
Thereafter, Plaintiff Leon A. Blais (plaintiff) and OCG filed their suit against defendant Dennis Revens, in his capacity as Administrator of the Workers Compensation Court (Dennis Revens or defendant), and Robert Arrigan, in his capacity as Chief Judge of the Workers Compensation Court (Chief Arrigan or defendant).
The defendants moved to dismiss the suit and to stay any discovery. They also filed a counterclaim alleging bad faith on the part of the plaintiffs. On August 9, 2001, this justice denied the defendants' motions to dismiss. After ruling on the motions to dismiss, this justice invoked her plenary powers and ordered an evidentiary hearing to which both Dennis Revens and Theresa Healy, along with the documents in question, would be subpoenaed. The purpose of the hearing was to determine whether the records were the records of a public body and to allow for an in-camera review of them if necessary. The hearing was scheduled for September 17, 2001. Discovery was stayed pending further order of the Court.
On September 17, 2001, Dennis Revens appeared at the evidentiary hearing. He appeared in his personal capacity and with his attorney who had filed a motion to quash the subpoena that had issued for the Revens records. Through counsel for Chief Arrigan and the Workers Compensation Court, Theresa Healy responded by producing the Healy records for an in camera review by this Court. Chief Arrigan acknowledged the Healy records to be records of the Workers Compensation Court but moved to quash the subpoena on the grounds that, pursuant to G.L. 1956 §38-2-2(4)(i)(A)(I), the records are not public records and the plaintiffs were not entitled to them under the APRA. The evidentiary hearing was held on the question of whether the Revens records were the private records of Dennis Revens, as opposed to records of the Workers Compensation Court.
Upon the conclusion of the September 17, 2001 evidentiary hearing, this justice determined that the Revens records were not public records and that the plaintiffs were not entitled to them under the APRA. It was clear from the testimony that the records in question were Mr. Revens' personal records.[1] Inasmuch as the APRA applies to public bodies only, this Court has no authority to enforce the APRA against an individual, Robinson v. Malinoff, 770 A.2d 873 (R.I. 2001). This justice granted Revens' motion to quash, thus disposing of the question of the Revens' documents.
At the time of the hearing, this justice briefly reviewed the original Healy documents, returned them to the defendant, and held the matter in abeyance to await counsels' memoranda. There was a delay in the proceedings when Operation Clean Government's counsel was jailed on federal criminal charges. This justice ordered a status conference to be held on May 16, 2002, at which time OCG's newly engaged counsel appeared. During the course of the status conference, the plaintiffs expressed considerable concern about newspaper reports that the Healy documents had been destroyed. Those reports turned out to be unfounded.
Thereafter, the plaintiffs filed motions to lift the stay on discovery, and the defendants reasserted their motions to dismiss. Thus, the matter is before the Court for a ruling concerning this justice's in-camera review of the Healy documents and for a ruling on the plaintiffs' request that the stay on discovery be lifted.
Immediately following the status conference of May 16, 2002, the original Healy documents were returned to this justice for review. Contrary to what was reported in the newspaper, the Healy records were not destroyed. This justice quite readily recognized the documents as being the same documents that were present at the time of the September 17, 2001 evidentiary hearing. This justice examined the Healy documents a second time in-camera.
 ANALYSIS 1. The Healy Documents
As this justice indicated on September 17, 2001, the Healy documents are sparse. The Healy documents are comprised of a loose-leaf notebook subdivided into sections — one for each active member of the Workers Compensation Court. Each section contains a record showing the current vacation time available to each judge and a record of running totals indicating how its author, Ms. Healy, arrived at current vacation time available. The notes reflect how many vacation days each judge has used and how many that judge has left. There are four pages concerning Chief Judge Arrigan. One double sided page consists of handwritten notes and dates. The remaining two pages are typed. The typed pages are partial copies of the handwritten notes and dates. The handwritten notes contain some references to Chief Arrigan's personal medical information and time he was out of work for illness or medical treatment. Though the record contains information that could be helpful in determining when Chief Arrigan may or may not have been physically in attendance at the Workers Compensation Commission, this justice cannot fairly characterize this as an attendance record. It is more aptly described as a log or a journal showing how much current vacation time Chief Arrigan had available in the year 2001. Regardless of how one characterizes this document, the broader question is whether a record such as this one is deemed to be a public record under the Access to Public Records Act, G.L. 1956 § 38-2-2. The relevant subsection is subsection (A)(I). That subsection establishes certain records as not public. Those records include:
 "all records which are identifiable to an individual employee; including but not limited to, personnel, medical treatment, welfare, employment security, pupil records, all records relating to a client/attorney relationship and to a doctor/patient relationship, and all personal or medical information relating to an individual in any files, including information relating to medical or psychological facts, personal finances, welfare, employment security, student performance, or information in personnel files maintained to hire, evaluate, promote, or discipline any employee of a public body."
The subsection goes on to provide, however, that with respect to employees, "the name, gross salary, job title, job description, dates of employment and positions held with the state or municipality, work location, business telephone number, the city or town of residence, and date of termination shall be public." G.L. 1956 § 38-2-2.
The rules of statutory construction are well settled. The task of this Court in construing a statute is to "`establish and effectuate the intent of the Legislature.'" Wayne Distribution Co. v. Rhode Island CommissionFor Human Rights, 673 A.2d 457, 460 (R.I. 1996) (quoting Rhode IslandState Labor Relations Board v. Valley Falls Fire District, 505 A.2d 1170, 1171 (R.I. 1986)). The intent of the legislature is determined "`by examining the language, the nature, and the object of the statute while giving its words their plain and ordinary meaning.'" C J JewelryCo., Inc. v. Department of Employment and Training Board of Review,702 A.2d 384, 385 (R.I. 1997). "`When the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings.'"Providence Worcester R. Co. v. Pine, 729 A.2d 202, 208 (R.I. 1999) (quoting Accent Store Design, Inc. v. Marathon House, Inc., 674 A.2d 1223, 1226 (R.I. 1996)). If the statutory provisions are unclear and ambiguous, this Court must examine the statutes in their entirety in order to "`glean the intent and purpose of the Legislature.'" Id. (citations omitted). "In so doing, [this Court must] consider the entire statute as a whole; individual sections must be considered in the context of the entire statutory scheme, not as if each section were independent of all other sections." Sorenson v. Colibri Corp., 650 A.2d 125, 128 (R.I. 1994). It is an accepted rule of statutory construction that "`an express enumeration of items in a statute indicates a legislative intent to exclude all items not listed.'" Terrano v. State Dept. ofCorrections, 573 A.2d 1181, 1183 (R.I. 1990) (citation omitted).
The plaintiffs contend that the legislature did not intend to keep from the public information about when a public employee is present in the workplace. They urge a restrictive reading of the definitional exceptions found at G.L. 1956 § 38-2-2(4)(i)(A)(I) and argue that the term, "personal information," should be read to mean confidential, privileged or intimate and private information, as opposed to any kind of information that appertains to a particular individual. In other words, the plaintiffs contend that the legislature intended the public to have access to all information concerning each individual public employee except for highly personal or intimate information. The plaintiffs urge the Court to balance various considerations in determining whether the records they seek should be made public. Finally, the plaintiffs contend that this document is a record containing information concerning Chief Arrigan's remuneration other than salary.
The legislative purpose behind the Access to Public Records Act is stated in the legislation. At G.L. 1956 § 38-2-2(4)(i)(A)(I), the legislature stated that the public's right to access to public records and the individual's right to dignity and privacy are both recognized to be principles of the utmost importance in a free society. As articulated, the purpose of the chapter also is to facilitate the public's access to public records. G.L. § 38-2-1. The intent of the chapter is to protect from disclosure information about particular individuals maintained in the files of public bodies when disclosure would constitute an unwarranted invasion of privacy. G.L. 1956 §38-2-1.
This justice found G.L. 1956 § 38-2-2(4)(i)(A)(I) to be clear. First the legislature made its statement, contained in (4)(i), that certain records shall not be deemed public records for the purposes of the Chapter. G.L. 1956 § 38-2-2. Then, after a colon, the legislature continued with subsection (A)(I), which specifies "All records which are identifiable to an individual . . . employee; . . . ." The language "including but not limited to," follows. Thereafter follows a list of various record categories. That list includes personnel records. G.L. § 38-2-2(4)(i)(A)(I). The language of the subsection then addresses itself to information categories. It designates as non-public "all personal or medical information relating to any individual in any files." The subsection continues by including in that category information relating to medical or psychological facts, personal finances, welfare, employment security, student performance, or information in personnel files maintained to hire, evaluate, promote or discipline an employee of a public body. Next, the subsection language goes on to specify 15 items of information concerning employees as being public. Those items are the employee's name, gross salary, salary range, total cost of paid fringe benefits, gross amount received in overtime, and other remuneration in addition to salary, job title, job description, dates of employment and positions held with the state or municipality, work location, business telephone number, the city or town of residence, and date of termination. As a matter of law, this justice must take this express enumeration of items, absent a strong indication of contrary legislative intent, as an indication of the legislature's intent to exclude, with respect to employees, all items not listed as non-public. G.L. 1956 § 38-2-2(4)(A)(I); see generally Sutherland Stat. Const. § 47.23 (5th Ed.) Thus, the statutory language very clearly designates as non-public all records and information identifiable to an individual employee except for the 15 enumerated items of information. Noticeably absent, and thus excluded, from the list of enumerated items are items such as attendance records, records of sick days, tardiness, vacation days and the like. See generally Centazzo v. Centazzo, 509 A.2d 995
(R.I. 1996) (citations omitted) ("an express enumeration of items in a statute indicates a legislative intent to exclude all items not listed);Sutherland Stat. Const. § 47.23 at 217 ("It has been . . . assumed when the legislature expresses things through a list, the court assumes that what is not listed is excluded.").
Even if the APRA could be viewed as ambiguous, it would be this justice's conclusion that the legislature intended the public to have only the very basic information concerning the employee and his or her position or job. The policy considerations seem obvious enough. Managing, supervising and disciplining employees should be left to the discretion of the employer or others charged with overseeing the employee. This justice discerns no utility in having the public peer over the shoulder of the employer/employee relationship even though the employer may be a public body and the employee a public employee. Nor does this justice discern any meaningful benefit to the public in having information that would allow it to second-guess management decisions concerning employees or to bring public pressure to bear concerning any particular employee and that employee's performance. Given the language of the statute and the stated purpose, this justice would be hard-pressed to conclude that the legislature intended to make records concerning an employee's available vacation time accessible for public consideration and debate.
It is also important to note that the (A)(I) subsection language, designating what is not deemed public, is expansive rather than limiting. In this justice's view, there is no better way for the legislature to protect all records appertaining to the individual employee than to say "all records" and then continue by including, without limitation, every broad category imaginable and which might concern or appertain to the individual. To this justice, this is sufficiently obvious and warrants no further discussion.
The remaining consideration is whether these records fall within the category of "other remuneration in addition to salary," designated as public. G.L. 1956 § 38-2-2(4)(A)(i)(I). Given the contents of the Healy records, this justice has concluded that they do not constitute a record of remuneration. To be sure, vacation time is a form of remuneration and the Healy records disclose how much of Chief Arrigan's total available vacation time was available to him at any given point in time. However, this justice's view of the APRA is that it does not designate as public the details of how the public body accounts for an employee's remuneration through its use of logs, journal, time cards, sick day tallies or vacation time tallies. For example, although paid sick days are a form of remuneration, records detailing remaining available paid sick leave are not public records under the plain language of the APRA. So, although generalized policy directives establishing the total amount of paid vacation or paid sick leave employees are entitled to claim could be deemed a public record, records accounting for the individual employee's use of that form of remuneration is not. Such records and information are highly individual to the employee, appertain very precisely to the person, and go far beyond the generalized employment information that the legislature has identified as public information.
The plaintiffs also argue that the special circumstances of this case require that APRA be interpreted in favor of disclosure for the additional reason that Chief Arrigan is the chief executive of the Workers Compensation Court and has no direct supervisor to call him to task should he abuse his vacation benefits. They also cite to the public interest. In essence, the plaintiffs ask this Court to engage in a balancing analysis. As the Supreme Court held in The Providence JournalCompany v. Convention Center Authority, 774 A.2d 40 (R.I. 2001), the applicability of APRA to records held by a public body is not determined by a balancing test. The Providence Journal Company case is one of several in which the Supreme Court held that to deploy a balancing test constitutes reversible error. Id. Again, in Robinson v. Malinoff, 770 A.2d at 873, the Court interpreted the APRA holding that the legislative intent is clear and is "to protect records concerning a particular individual, and, in particular, when that disclosure would constitute an unwarranted invasion of that person's privacy" (emphasis added). Thus although the purpose of the APRA, as stated by the legislature, arguably, is suggestive of a balancing approach, the Rhode Island Supreme Court has always strictly applied both the substantive and procedural sections of the APRA. Robinson, 770 A.2d. at 873; Bernard v. Vose,730 A.2d 30 (R.I. 1999). Similarly, in Bernard v. Vose, the Supreme Court held that records pertaining to the individual and contained in any files of a public body are not considered public because disclosure wouldconstitute an unwarranted invasion of that personal privacy (emphasis added.)
So, although it is true that Chief Arrigan has no supervisor and can be disciplined only by the Commission on Judicial Tenure and Discipline or the Supreme Court, that fact has no bearing on whether records held by a public body are subject to disclosure under the APRA. Furthermore, the Supreme Court Order of April 3, 2001, in In re John Lallo, 796 A.2d 467 (R.I. 2002), an appeal from the Commission on Judicial Tenure and Discipline, shows there are any number of ways that the Commission on Judicial Tenure and Discipline could collect evidence concerning the amount of time a judge spends in the courthouse and whether the judge is guilty of some breach of the canons. The fact that Chief Arrigan holds the position of Chief Judge of the Workers Compensation Court provides no justification here for departing from the well settled law.
It is this justice's conclusion that the Healy records and the information contained in them, however they are characterized, are not public records, that the plaintiffs are not entitled to disclosure of their contents, and that the motion to quash the subpoena must be granted. Nonetheless, this justice has sealed a copy of those four pages of the Healy records that pertain to Chief Arrigan, and it is hereby ordered that the Clerk of Court place these records in the Court's vault as part of the record in this case, to be opened only pursuant to an order of this Court or the Supreme Court.
 2. The Plaintiffs' Request for Discovery
The only remaining issue is the plaintiffs' request for discovery. The plaintiffs request discovery so that they can determine what other records might exist and might help them in their quest to determine when Chief Arrigan is present at the Workers Compensation Court. The plaintiffs' demand for discovery is, in part, premised upon their contention that Chief Arrigan failed to disclose the existence of the Healy documents in his initial response dated February 27, 2001. They contend that Chief Arrigan's failure to disclose the existence of the Healy documents demonstrates the need for a deeper probe into what other records might exist.
The fundamental flaw in this argument, however, is that Chief Arrigan most certainly did disclose the existence of the Healy documents. In his letter of February 22, 2001, Chief Arrigan disclosed that "we do maintain a record of current vacation time available to the active members of the Court." The Healy records, which this justice has reviewed, are clearly the same records.[2] And, to the extent that Chief Arrigan did not disclose the Revens documents, there is no foul play here. As indicated above, the evidence taken on September 17, 2001 revealed that the Revens records were not the records of the Workers Compensation Court.
The question presented is whether an individual or entity making a claim for denial of access to public records should be permitted to commence discovery proceedings, notwithstanding that the Court has determined that the records sought are not public records. And, assuming that the Court, in the context of an unresolved APRA claim, could order limited discovery on the question of what records the public body keeps and maintains, a question still remains concerning whether the Court should permit discovery absent a substantial showing that the public body has failed to act in good faith, has concealed records, or has failed to disclose the existence of records. After consideration of the matter, this justice has concluded that to order discovery in the absence of such a showing would amount to an abuse of discretion. This justice has also concluded that no such showing has been made in the instant case.
First, it is inherently likely that the Workers Compensation Court does not maintain records of judges' attendance. The reason should be evident. Judges are like other executive level employees who get paid to think, act, respond and follow up even when they are not at the office. In fulfilling their various duties and responsibilities, executive level employees are traditionally self-accountable and are neither expected nor required to keep specific account of the hours and minutes they spend in performing those aspects of their duties, some of which might ordinarily be expected to require their presence in the workplace. While a judge's work week, as a state employee, is designated in his or her paycheck as 35 hours, that designation merely operates as a baseline against which a state employee's hourly rate is shown and overtime pay is calculated. The 35 hours is not a reflection of the hours that judges and high-level administrators spend in the actual performance of their duties. The 35 hour designation reflects neither when they are actually in the courthouse or workplace, nor the hours that the workplace is open for official business. For example, according to G.L. 1956 § 8-7-10, the Superior Court is deemed open for business 24 hours a day if necessary. Though not in the building at all times, Superior Court justices are expected to perform their duties and responsibilities, as necessary, irrespective of the hours the courthouse doors are ordinarily unlocked and open to the public. Judges of the Superior Court are often required to respond to emergencies at night and on weekends. They also frequently work nights and weekends on motions, jury instructions, decisions and the like. Their time spent on such endeavors is not accounted for and the judges get no overtime or other credit for it. Conversely, there is no accounting and crediting for a judge's absences from the workplace to attend profession related events and meetings, educational seminars or to participate in community service projects. There is also no accounting and crediting of a judge's discretionary absences. By that, this justice refers to absences for personal appointments and meetings or other miscellaneous absences or interruptions in work that do not substantially interfere with the judge's discharge of his or her professional duties. These discretionary absences are largely left unaccounted and uncredited for the reason that they do not substantially interfere with the judge's discharge of his or her professional responsibilities and, in fact, do permit a judge, like all other executive level professionals, the reasonable flexibility and latitude necessary to balance his or her competing professional obligations and personal requirements including personal and leisure time.
In sum, judges are expected to and do think "round the clock." Judges are no different from attorneys, doctors, businessmen, writers, entrepreneurs, government leaders and other professionals whose duties require a strong component of intellectual creativity and independent thought that does not turn on and off as they pass in and out of the physical confines of the workplace. Unlike wage earners whose presence in the workplace is usually necessary to deploy their skills, these kinds of professionals can and do deploy their skills around the clock, regardless of where they may be or what they may be doing at any given moment. For these reasons, it is to be expected that courts do not maintain records of judges' attendance and Chief Arrigan's denial that such records exist raises no adverse inference.
Furthermore, there is nothing about Chief Arrigan's manner of handling OCG's records request that suggests he or anyone else has attempted to conceal the existence of records or otherwise attempted to avoid the requirements of the APRA. The record in this case reveals that Chief Arrigan neither made a trans-record group, information-based effort to identify specific data or information that might be responsive to the objectives driving OCG's records request, nor did he attempt to cull that data or information from the various existing record groups. His failure to do so is no indication that he was attempting to avoid the requirements of the APRA or that he failed to act in good faith in responding to the request. The reason that an administrator of a public body would not engage in such an undertaking should be clear enough. The APRA limits a public body's obligations in producing its records to producing them in the form in which the record is maintained at the time the request is made. G.L. 1956 § 38-2-3(f). The public body is not required to select, organize or compile the data or information that its administrators perceive will respond to the intent behind the request. G.L. 1956 § 38-2-3(f). Public bodies are repositories of records, not libraries; and their administrators are not research assistants who should cull, compile or consolidate the data sought based upon their own idea of what is appropriately extrapolated from the existing records given the discernable objectives behind the request. G.L. 1956 §38-2-3(f) and (h). Furthermore, public bodies are expected to make a neutral response to records requests regardless of the motivation driving the request and without attempting either to hinder or advance the motivation behind the request. G.L. § 38-2-3(a),(f) and (h).
For example, court orders signed by Chief Arrigan would presumably contain signature dates that might provide some indication of whether he may have been in attendance at the courthouse on a given day. However, the Workers Compensation Court's duty to respond to a request such as OCG's first request would not include the obligation to make an independent determination that orders signed by Arrigan, indeed, would shed light upon the question of his attendance nor would it include any obligation to search for and identify those orders and then provide OCG with access to them. G.L. 1956 § 38-2-3(a), (f) and (h). On the other hand, had OCG requested access to all orders of the Workers Compensation Court or even orders signed by Chief Arrigan, the Workers Compensation Court's duty would have been no more than to make its case files available for inspection in the form that they are maintained in the ordinary course. G.L. 1956 § 38-2-3(f). The burden would have fallen to OCG to search through the case files to locate the ones containing orders signed by Chief Arrigan, to review those orders and to determine whether they suited its purposes.
Considering the record in this case and the arguments and memoranda of the parties, this justice has determined that it would constitute an abuse of discretion to permit discovery. Consequently, the plaintiffs' request in this regard must be denied.
 CONCLUSION
Because this decision is dispositive of the remaining issues in the case, it is hereby ordered that judgment shall enter for the defendants on all Counts of the Complaint. This justice hereby declares that the records requested by the plaintiff Operation Clean Government, Inc.'s March 8, 2001 request are not public records within the meaning of the APRA and that the plaintiffs are not entitled to view them.
The defendants' counterclaim is denied and dismissed on the grounds referenced reasons in footnotes 1 and 2. Judgment shall enter for the plaintiffs on the Counterclaim.
[1] It did not become clear until the evidentiary hearing was underway that the records were Revens' personal records and not records of the Workers Compensation Court. For that reason, the plaintiffs handily survived the defendants' earlier motions to dismiss. For that reason, too, this justice does not view the plaintiffs as having acted in bad faith, as is asserted in the Counterclaim, when they filed their Complaint.
[2] That the records are one in the same becomes apparent only upon review of the Healy documents. That being the case, the plaintiffs cannot be faulted for failing to discern that the records they requested on March 8, 2001 were the ones Chief Judge Arrigan referred to in his letter of February 22, 2001.